**UNITED STATES BANKRUPTCY COURT**
DISTRICT OF OREGON

ELIZABETH L. PERRIS
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1536

DIANE K. BRIDGE, LAW CLERK
BETHANY COLEMAN-FIRE, LAW CLERK

May 8, 2013

Mr. Gerold Whisenart
OnPoint Community Credit Union
P.O. Box 3750
Portland, OR 97208-3750

Lisa Ann Hanes
724 SW Edmunston Street
McMinnville, OR 97128

Re: In re Lisa Ann Hanes, Case No. 12-36628-tmb7
    Reaffirmation Agreement with OnPoint Community Credit Union

Dear Mr. Whisenart and Ms. Hanes:

    After reviewing the documents submitted to the court by Mr. Whisenart and considering the information provided by Ms. Hanes at the hearing held on March 11, 2013, for the following reasons the reaffirmation agreement between OnPoint Community Credit Union ("OnPoint") and Ms. Hanes ("debtor") is approved.

    OnPoint argued in its correspondence that, the cross-collateralization clauses in the agreements extending credit to debtor were sufficiently "clearly written and specifically refer to the antecedent debt that is to be cross-collateralized" and, therefore, meet the standard for cross-collateralization. OnPoint further argued that Keybank v. Matrix Development Corp., 2009 WL 2163462 (D. Or. July 17, 2009), should not apply because it involved commercial real estate in the context of a chapter 11 case.

    I find OnPoint's argument that Matrix should not apply unpersuasive. Nothing in the Matrix decision suggests that the principles applied in that case should apply only in the commercial or chapter 11 contexts. OnPoint provides no explanation why the Matrix approach is unsuitable for application in a consumer credit context. Further, I have applied the Matrix approach in other consumer credit contexts. See, e.g., In re Sterling, Case No. 11-36782-rld7 (Doc. 28). Accordingly, I

apply the Matrix approach to determine whether the debt is cross-collateralized.

Both OnPoint and debtor agree that there was no outstanding credit card balance at the time of the auto loan. Therefore, under the analysis set out in Matrix, the credit card debt must be subsequent debt. 2009 WL 2163462 at *3. In order for subsequent debt to be cross-collateralized, it must be of the same class. Id. at *4 (quoting Community Bank v. Jones, 278 Or. 647, 666, (1977)).

A review of the credit card agreement shows that credit card debt is clearly open-end credit. Truth in Lending (Regulation Z), 12 C.F.R. § 226.2(a)(20). Creditor reasonably contemplated repeated transactions, the credit card agreement provided for finance charges on outstanding unpaid balances and credit appears to have been made available to the extent that any outstanding balance was repaid. Doc. 21.

Whether the auto loan debt arose out of an open-end credit account is a closer question. Debtor opened an account called a "Consumer Open-End Credit Plan." Doc. 21. The loan documents for the account contemplate that multiple and various types of "Advance Receipt," or extension of credit, may be issued under the agreement. However, debtor explained at the hearing that she actually utilized the account only for one advance, the auto loan.

The language of the Consumer Open-End Credit Plan meets the standard for open-end credit: First, creditor expressly states its anticipation of repeated transactions. Plan, p. 1 ("We anticipate that you will borrow money (called "advances") from time to time.") Second, the Plan contemplates finance charges. E.g., Plan, p. 1. ("The Finance Charge begins to accrue on the date of each advance and accrues for each day the balance remains unpaid.") Finally, credit appears to be generally available to the extent outstanding balances are repaid. Plan, p. 1, ("The amount of credit available against any credit limit may vary in accordance with the payments you make against your outstanding balance.")

In addition to the language of the agreement, courts also examine the actual behavior of the parties to classify the credit. In In re Wattson, 286 B.R. 594 (Bankr.N.J. 2002), the bankruptcy court held that, where future transactions had in fact occurred the account was properly characterized as open-end. In Carlson v. Raymour and Flannigan Furniture Company, 2011 WL 1454068 (W.D.N.Y), the bankruptcy court held that the open-

endedness of the credit agreement was "doubtful because plaintiffs entered it only for one long-term purchase." However, this is not dispositive. "[T]he creditor must reasonably contemplate repeated transactions. This means that the credit plan must be usable from time to time and the creditor must legitimately expect there will be repeat business rather than a one-time credit extension. . . . The fact that a particular customer does not return for further credit extensions does not prevent a plan from having been properly characterized as open-end." Benion v. Bank One, Dayton, N.A., 144 F.3d 1056, 1058 (7th Cir. 1998).

Debtor reported that she regularly used the credit extended to her through the credit card. While she only used the Consumer Open-End Credit Plan to finance the automobile, she also reported that she did not seek further access to credit. Given that loan documents for the Consumer Open-End Credit Plan contemplate repeat transactions and meet the other requirements of Regulation Z as outlined above, and that there is no evidence debtor would have been denied access to further credit had she sought it, I am persuaded that the auto loan is properly characterized as open-end.

Because the accounts are of the same class, under Matrix, I find that the credit card debt is cross-collateralized. Accordingly, the Reaffirmation Agreement will be approved. An order approving the Agreement will be entered concurrently with this letter.

Very truly yours,

Elizabeth L. Perris
Bankruptcy Judge